IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| LEFLORE COUNTY BOARD OF SUPERVISORS | PLAINTIFF |
| V. | CIVIL CAUSE NO. 4:24-cv-33-DAS |
| MERITOR, INC., ET AL | DEFENDANTS |

MEMORANDUM OPINION

Before the court is Defendant Meritor, Inc.'s Motion for Summary Judgment [131], which has been fully briefed and is ripe for review. For the reasons discussed below, the court concludes that Meritor is entitled to judgment as a matter of law on all claims brought by Plaintiff Leflore County Board of Supervisors.

*Background and Procedural History*

This action arises from Meritor's 2006 remediation and disposal of approximately 7,243 tons of buff-compound soils and associated materials from the Moose Lodge Road Disposal Area (MLRDA) in Grenada, Mississippi. The disposal occurred pursuant to a Removal Work Plan prepared by Meritor's consultant, SECOR, which was expressly reviewed and approved by the Mississippi Department of Environmental Quality (MDEQ). Prior to disposal, MDEQ issued a written "Non-Hazardous Determination" concluding that the buff compound and contaminated soils did not contain listed hazardous waste and could be managed as nonhazardous "special waste," provided they did not exhibit a hazardous characteristic. Meritor, relying on this agency determination and its own TCLP testing and process-knowledge analysis, disposed of the material at the Leflore County landfill operated by Waste Connections, Inc., which accepted the waste.

Nearly two decades later, Plaintiff filed suit alleging that the waste was hazardous and that Meritor's disposal caused the County to incur—or in the future might incur—investigative and remedial expenses. Plaintiff asserts claims of negligence, public nuisance, and trespass. Meritor seeks summary judgment on multiple grounds, including failure to exhaust administrative remedies before MDEQ, absence of evidence establishing a hazardous disposal, and the speculative nature of Plaintiff's damages.

*Analysis*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

I.     Damages

The threshold defect in Plaintiff's case is the absence of proof of legally cognizable damages. Regardless of the theory asserted—negligence, nuisance, or trespass—Plaintiff must show an actual, present injury. Speculation that harm might exist or might arise in the future is insufficient to withstand summary judgment. *See Blase Indus. Corp. v. Anorad Corp.*, 442 F.3d 235, 238 (5th Cir. 2006); *Paz v. Bush Engineered Materials, Inc.*, 949 So. 2d 1, 5 (Miss. 2007).

Plaintiff's alleged injury is not contamination, property damage, regulatory liability, or public health impact. Instead, Plaintiff's theory is that because Meritor disposed of material at the landfill in 2006 which could conceivably have contained hazardous constituents, the County may at some point need to undertake an investigation and possibly remediation. But the summary judgment record establishes that this asserted injury remains entirely hypothetical.

First, Plaintiff has conducted no sampling, testing, or subsurface investigation at the landfill directed at the disposed material. Plaintiff cannot identify the location of the material within the landfill footprint. No analytical data show the presence of a hazardous constituent

attributable to the MLRDA waste. There is no evidence of a release, no detection of contaminants above regulatory standards. In short, Plaintiff has no evidence that contamination exists.

Second, Plaintiff identifies no regulatory consequence. MDEQ has issued no notice of violation, directive, compliance order, or request for additional investigation related to the 2006 disposal. No agency has required corrective action. Plaintiff therefore does not face an existing legal obligation to spend money. Courts do not award damages based on the possibility that a regulator might someday require action.

Third, Plaintiff presents no evidence of property damage or loss of use. The landfill continues to operate. Plaintiff does not claim that the landfill's capacity has been reduced other than as agreed at intake, that any portion has been taken out of service, or that revenue has been lost. There is no evidence of diminution in value. No third-party claims have been asserted against Plaintiff. Thus, there is no present economic injury.

Plaintiff's damages theory instead rests on projected costs for a potential investigation and potential removal of material. Those projections depend on a sequence of contingencies: that hazardous contamination exists; that it will be discovered; that it will be attributed to the MLRDA waste; that regulators will require action; and that the chosen remedy will involve excavation and removal rather than any number of less drastic alternatives. Mississippi law does not permit recovery of damages that depend on such layered contingencies. *See Paz*, 949 So. 2d at 3-5. A plaintiff must show that injury is actual or reasonably certain—not merely possible.

The speculative nature of Plaintiff's theory is underscored by the status of its expert proof. This Court has excluded Plaintiff's expert opinions regarding investigation costs. Even if considered, the removal-cost estimates remain conditional upon assumptions for which Plaintiff

provides no evidentiary support. Expert opinions that simply assume the existence of contamination cannot create a fact issue where the record contains no proof that contamination exists.

At bottom, Plaintiff seeks to recover the cost of determining whether it has been injured. But investigative expenses are not recoverable damages absent evidence of an underlying actionable injury. The law does not permit a plaintiff to shift the cost of exploratory inquiry to a defendant based solely on suspicion.

Because Plaintiff has not shown contamination, regulatory liability, property damage, economic loss, or any other present injury, it cannot establish damages. That failure is fatal to every claim in the case and independently warrants summary judgment.

## II. *Hazardousness*

Even if Plaintiff could establish damages, its claims would still fail because the record contains no evidence that the material Meritor disposed of in 2006 was hazardous waste or otherwise toxic, and it contains substantial contemporaneous evidence that it was not.

Plaintiff's theory of liability depends on the premise that the MLRDA buff-compound soils may have contained hazardous constituents. But at summary judgment, a party must produce evidence, not suspicion. Plaintiff has offered no analytical data showing that the disposed material exhibited a characteristic of hazardous waste under RCRA criteria, no test result exceeding a regulatory threshold, and no agency finding that the material was mischaracterized. Plaintiff's expert asserts only that additional investigation or testing would have been advisable. That opinion, even if credited, does not constitute evidence that the waste was in fact hazardous at the time of disposal.

The evidentiary record runs in the opposite direction. Over a period of years preceding the 2006 removal, multiple environmental investigations were conducted at the site. These included soil borings, laboratory analyses, and TCLP testing directed at determining whether the material exhibited hazardous characteristics. Those data were submitted to MDEQ in connection with Meritor's request for regulatory guidance. After reviewing the information, MDEQ issued a written Non-Hazardous Determination concluding that the buff compound and associated soils did not constitute listed hazardous waste and could be managed as nonhazardous special waste. The disposal occurred under an MDEQ-approved Removal Work Plan reflecting that regulatory conclusion.

The landfill operator likewise reviewed the analytical data and accepted the waste as compliant special waste. Plaintiff does not contend that Meritor concealed data from either MDEQ or the operator, nor does Plaintiff identify any testing result contradicting the agency's determination. Thus, every contemporaneous regulatory and technical evaluation reflected in the record supported the conclusion that the material could be managed as nonhazardous.

Plaintiff's position therefore rests on retrospective doubt rather than contrary evidence. But summary judgment cannot be defeated by the suggestion that further testing might have yielded a different answer. A jury may not infer hazardousness merely because the material originated at an industrial site or because a different investigative approach could have been taken. Without evidence of a hazardous characteristic, a listed waste, or a regulatory exceedance, there is no factual basis from which a reasonable jury could conclude that Meritor disposed of hazardous material.

This absence of proof is independently fatal to Plaintiff's claims. Negligence requires proof that Meritor mishandled material in a way that created an unreasonable risk of harm;[1] nuisance requires proof of a condition injurious to public health or the environment;[2] and trespass, as framed here, depends on the theory that hazardous waste was wrongfully placed in the landfill.[3] Where the record contains no evidence of toxicity and substantial evidence of non-hazardous classification approved by the responsible regulatory agency, those elements cannot be established. Accordingly, the hazardousness issue provides a second, independent basis for summary judgment.

III.     Administrative Exhaustion

Although the Court's conclusions regarding damages and the absence of proof that the disposed material was hazardous are independently dispositive, Defendant also argues that Plaintiff's claims are barred by the doctrine of administrative exhaustion. The Court agrees that this doctrine provides an additional ground supporting summary judgment.

Mississippi law requires parties to pursue available administrative remedies before resorting to the courts when the dispute centers on matters committed to an agency's regulatory authority and technical expertise. *See Chevron U.S.A., Inc. v. Smith*, 844 So. 2d 1145, 1148 (Miss. 2002). The doctrine is rooted in two related principles: first, that agencies charged with administering complex regulatory schemes should have the opportunity to apply their expertise in the first instance; and second, that courts should avoid adjudicating disputes that effectively seek to second-guess agency determinations made within that delegated authority. *Id.*

---

[1] *See Brown v. Olin Chemical Corp.*, 231 F.3d 197, 200 (5th Cir. 2000)
[2] *See Leaf River Forest Products, Inc. v. Ferguson*, 662 So. 2d 648, 664 (Miss. 1995) (*abrogated on other grounds by Adams v. U.S. Homecrafters*, 744 So. 2d 736 (Miss. 1999)).
[3] *See Anglado v. Leaf River Forest Products, Inc.*, 716 So. 2d 543, 548 (Miss. 1998). *See also Robertson v. Chateau Legrand Prop. Owner's Ass'n*, 39 So. 3d 931, 939 (Miss. Ct. App. 2009) (confirming consent is a defense to trespass).

Here, the conduct Plaintiff challenges—the characterization, handling, and disposal of the MLRDA material—occurred within a regulatory framework overseen by the Mississippi Department of Environmental Quality. *See Georgia-Pacific Corp., Inc. v. Mooney*, 909 So. 2d 1081, 1088-91 (Miss. 2005). The record reflects that Meritor submitted analytical data to MDEQ, that MDEQ evaluated the nature of the material, and that the agency issued a written Non-Hazardous Determination. The removal action proceeded under an MDEQ-approved work plan. Thus, the central premise of Plaintiff's lawsuit—that the waste was improperly classified and should not have been managed as nonhazardous—necessarily calls into question the correctness of MDEQ's own regulatory determination.

Plaintiff seeks, in substance, a judicial finding that the material was hazardous or that additional remedial action should now be required. Those questions fall squarely within the agency's technical and regulatory purview. Where a plaintiff's claims depend on reexamining an agency-approved environmental determination, the administrative process must be invoked before judicial relief is sought.

Plaintiff argues that exhaustion is unnecessary because it seeks common-law damages and because MDEQ cannot award such relief. But the cases relied upon by Plaintiff involve circumstances where adjudicating the tort claims did not require a court to revisit a specific agency decision or technical approval. This case is different. The alleged wrong cannot be established without determining that MDEQ's waste classification and approval of the disposal approach were erroneous or inadequate. The fact that Plaintiff requests monetary damages does not eliminate the need for the agency to address the underlying regulatory question in the first instance. *See Melton Properties, LLC v. Ill. Cent. R.R. Co.*, 539 F. Supp. 593, 605 (N.D. Miss.

2021) (findings plaintiffs' claims subject to exhaustion because they "relate to Illinois Central's faulty remediation of plaintiff's property, a remedy which fall squarely within MDEQ's authority") (cleaned up); *Petro Harvester Oil & Gas Co., LLC v. Baucum*, 323 So. 3d 1041, 1048 (Miss. 2021) (finding exhaustion not required where there is no nexus between the parties and the agency); *Georgia-Pacific Corp., Inc. v. Mooney*, 909 So. 2d 1081, 1091 (Miss. 2005) (Notwithstanding the monetary damages alleged, "[t]o the extent that causes of action relate to the need for closure of a site or relate to the authority of MDEQ, a party must exhaust its administrative remedies prior to seeking relief from the courts."); *Town of Bolton v. Chevron Oil. Co.*, 919 So. 2d 1101, 1108 (Miss. Ct. App. 2005) ("[T]he question presented . . . is not whether the Board has the power to determine the landowners' common law claims as if it were a court of law and to award the damages which the landowners seek. Rather, the question is whether the Board's authority embraces the types of harm suffered by the landowners such that the landowners are precluded from seeking monetary and injunctive relief in the [court] until they exhaust their remedies before the Board.").

It is undisputed that Plaintiff did not petition MDEQ for review, did not seek a reopening of the agency's determination, and did not invoke any administrative mechanism to challenge the 2006 classification or request agency-directed investigation. Instead, Plaintiff filed this civil action nearly two decades later, asking this Court to resolve issues that lie at the core of MDEQ's regulatory responsibilities.

Accordingly, even if Plaintiff had produced evidence of hazardousness or damages, the failure to pursue available administrative remedies would present a further barrier to maintaining these claims in court. The exhaustion doctrine therefore provides an additional, independent basis supporting entry of summary judgment in Defendant's favor.

For these reasons, Meritor's Motion for Summary Judgment [131] is **GRANTED.**

An order in accordance with this opinion shall issue this day.

SO ORDERED, this the 4th day of February, 2026.

                                                  /s/ David A. Sanders
                                                  UNITED STATES MAGISTRATE JUDGE